## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HENRY W. JENKINS, Individually and on Behalf of all Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> WAYFAIR INC., NIRAJ SHAH, and MICHAEL FLEISHER, <br><br> Defendants. | Case No. <br><br> CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS <br><br> <u>JURY TRIAL DEMANDED</u> |

Plaintiff Henry W. Jenkins ("Plaintiff") by and through the undersigned attorneys, allege the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, counsel's investigation, which includes, without limitation: (1) a review and analysis of regulatory filings made by Wayfair Inc. ("Wayfair" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (2) a review and analysis of press releases and media reports issued by and disseminated by Wayfair; and (3) a review of other publicly available information concerning Wayfair.

## <u>NATURE OF THE ACTION</u>

1.     This is a securities class action on behalf of all persons or entities who purchased or otherwise acquired Wayfair securities between October 2, 2014 and August 31, 2015, inclusive (the "Class Period"), seeking to recover compensable damages caused by Defendants' violations of federal securities law and to pursue remedies under asserting

claims under Sections 10(b) and 20(a) the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.       The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5). This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

3.       Venue is proper in this District pursuant to 28 U.S.C. §1391(b), and Section 27(c) of the Exchange Act (15 U.S.C. §78aa(c)) as Defendants maintain an office in this district and a significant portion of Defendants' actions and the subsequent damages took place within this District.

4.       In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

5.       Plaintiff Henry W. Jenkins, as set forth in the accompanying certification, incorporated by reference herein, purchased Wayfair securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

6.       Defendant Wayfair is a Delaware corporation with its principal executive offices situated at 4 Copley Place, 7th Floor, Boston, MA. It also maintains an office at 155 Sixth Ave, 7th Floor New York, NY 10013. Wayfair is purportedly one of the largest online retailer of home

goods. Wayfair Class A common stock is traded on the New York Stock Exchange ("NYSE") under the symbol "W."

7.      Defendant Niraj Shah ("Shah") has served as the Company's Chief Executive Officer and Director at all relevant times.

8.      Defendant Michael Fleisher ("Fleisher") has served as the Company's Chief Financial Officer at all relevant times.

9.      Defendants Shah and Fleisher are referred to herein as the "Individual Defendants."

10.     Wayfair and the Individual Defendants are collectively referred to herein as the "Defendants."

## RELEVANT NON-PARTIES

11.     Overstock.com Inc. ("Overstock") is a Delaware corporation with its principal executive offices situated at 6350 South 3000 East Salt Lake City, Utah 84121. Overstock operates as an online retailer primarily in the United States. Overstock common stock is traded on the NASDAQ under the symbol ("OSTK").

## SUBSTANTIVE ALLEGATIONS

### Background

12.     Wayfair is purportedly one of the world's largest online destinations for home furnishings and decor. Through its e-commerce business model, the Company offers over seven million products from over 7,000 suppliers across five distinct brands: Wayfair.com, Joss & Main, AllModern, DwellStudio and Birch Lane.

**Materially False and Misleading**
**Statements Issued During the Class Period**

13.    The Class Period starts on October 2, 2014. On that day, shares of Wayfair began

trading on the NYSE following its initial public offering ("IPO") of 11 million shares at $29.00

per share, which raised $319 million.

14.    The registration statement and the prospectus that formed part of the registration

used to conduct the IPO (collectively, the "Registration Statement"), which was signed by

Defendants Shah and Fleisher, stated the following with regards to its competitors:

> **Our business is highly competitive. Competition presents an ongoing**
> **threat to the success of our business.**
>
> Our business is rapidly evolving and intensely competitive, and we have
> many competitors in different industries. Our competition includes:
> furniture stores, big box retailers, department stores, specialty retailers,
> and online home goods retailers and marketplaces, including:
>
> - Furniture Stores: Ashley Furniture, Bob's Discount Furniture, Havertys,
>   Raymour & Flanagan and Rooms To Go;
> - Big Box Retailers: Bed, Bath & Beyond, Home Depot, IKEA, Lowe's,
>   Target and Walmart;
> - Department Stores: JCPenney and Macy's;
> - Specialty Retailers: Crate and Barrel, Ethan Allen, HomeGoods, Pottery
>   Barn and Restoration Hardware; and
> - ***Online Home Goods Retailers and Online Marketplaces: Amazon, eBay***
>   ***and One Kings Lane.***
>
> We expect competition in e-commerce generally to continue to increase.
> We believe that our ability to compete successfully depends upon many
> factors both within and beyond our control, including:
>
> - the size and composition of our customer base;
> - the number of suppliers and products we feature on our sites;
> - our selling and marketing efforts;
> - the quality, price and reliability of products offered either by us;
> - the convenience of the shopping experience that we provide;
> - our ability to distribute our products and manage our operations; and
> - our reputation and brand strength.

Many of our current competitors have, and potential competitors may have, longer operating histories, greater brand recognition, larger fulfillment infrastructures, greater technical capabilities, faster and less costly shipping, significantly greater financial, marketing and other resources and larger customer bases than we do. These factors may allow our competitors to derive greater net revenue and profits from their existing customer base, acquire customers at lower costs or respond more quickly than we can to new or emerging technologies and changes in consumer habits. These competitors may engage in more extensive research and development efforts, undertake more far-reaching marketing campaigns and adopt more aggressive pricing policies, which may allow them to build larger customer bases or generate net revenue from their customer bases more effectively than we do.

(Emphasis added).

15.    On November 14, 2014, the Company filed a Form 10-Q for the quarterly period ended September 30, 2014 with the SEC (the "3Q 2014 10-Q"), which stated the following with regards to its competitors:

**Our business is highly competitive. Competition presents an ongoing threat to the success of our business.**

Our business is rapidly evolving and intensely competitive, and we have many competitors in different industries. Our competition includes: furniture stores, big box retailers, department stores, specialty retailers, and online home goods retailers and marketplaces, including:

- Furniture Stores: Ashley Furniture, Bob's Discount Furniture, Havertys, Raymour & Flanagan and Rooms To Go;
- Big Box Retailers: Bed, Bath & Beyond, Home Depot, IKEA, Lowe's, Target and Walmart;
- Department Stores: JCPenney and Macy's;
- Specialty Retailers: Crate and Barrel, Ethan Allen, HomeGoods, Pottery Barn and Restoration Hardware; and
- ***Online Home Goods Retailers and Online Marketplaces: Amazon, eBay and One Kings Lane.***

We expect competition in e-commerce generally to continue to increase. We believe that our ability to compete successfully depends upon many factors both within and beyond our control, including:

- the size and composition of our customer base;

- the number of suppliers and products we feature on our sites;
- our selling and marketing efforts;
- the quality, price and reliability of products offered either by us;
- the convenience of the shopping experience that we provide;
- our ability to distribute our products and manage our operations; and
- our reputation and brand strength.

> Many of our current competitors have, and potential competitors may have, longer operating histories, greater brand recognition, larger fulfillment infrastructures, greater technical capabilities, faster and less costly shipping, significantly greater financial, marketing and other resources and larger customer bases than we do. These factors may allow our competitors to derive greater net revenue and profits from their existing customer base, acquire customers at lower costs or respond more quickly than we can to new or emerging technologies and changes in consumer habits. These competitors may engage in more extensive research and development efforts, undertake more far-reaching marketing campaigns and adopt more aggressive pricing policies, which may allow them to build larger customer bases or generate net revenue from their customer bases more effectively than we do.

> (Emphasis added).

16.    The 3Q 2014 10-Q was signed by Defendants Shah and Fleisher. Attached to the 3Q 2014 10-Q were the Sarbanes-Oxley Act of 2002 ("SOX") certifications signed by Defendants Slater and Shaheen attesting to the accuracy of the 3Q 2014 10-Q.

17.    On March 19, 2015, the Company filed a Form 10-K for the fiscal year ended December 31, 2014 with the SEC (the "2014 10-K"), which stated the following with regards to its competitors:

> **Competition**
>
> The market for online home goods and furniture is highly competitive, fragmented and rapidly changing. While we are primarily focused on the mass market, we compete across all segments of the home goods market. Our competition includes furniture stores, big box retailers, department stores, specialty retailers and online retailers and marketplaces:

- Furniture Stores: Ashley Furniture, Bob's Discount Furniture, Havertys, Raymour & Flanigan and Rooms To Go;
- Big Box Retailers: Bed Bath & Beyond, Home Depot, IKEA, Lowe's, Target and Walmart;
- Department Stores: JCPenney and Macy's;
- Specialty Retailers: Crate and Barrel, Ethan Allen, HomeGoods, Pottery Barn and Restoration Hardware; and
- ***Online Retailers and Marketplaces: Amazon and eBay.***

We believe that the primary competitive factors in the mass market are vast selection, visually inspiring browsing, compelling merchandising, ease of product discovery, price, convenience, reliability, speed of fulfillment and customer service. We believe our technological and operational expertise allows us to provide our customers with a vast selection of goods, attractive price points, reliable and timely fulfillment, plus superior customer service, and that the combination of these capabilities is what provides us with a sustainable competitive advantage.

(Emphasis added).

18.    The 2014 10-K was signed by Defendants Shah and Fleisher. Attached to the 2014 10-K were the SOX certifications signed by Defendants Slater and Shaheen attesting to the accuracy of the 2014 10-K.

19.    On May 14, 2015, the Company filed a Form 10-Q for the quarterly period ended March 31, 2015 with the SEC (the "1Q 2015 10-Q"), which stated the following with regards to its competitors:

**Our business is highly competitive. Competition presents an ongoing threat to the success of our business.**

Our business is rapidly evolving and intensely competitive, and we have many competitors in different industries. Our competition includes: furniture stores, big box retailers, department stores, specialty retailers, and online retailers and marketplaces, including:

- Furniture Stores: Ashley Furniture, Bob's Discount Furniture, Havertys, Raymour & Flanagan and Rooms To Go;
- Big Box Retailers: Bed, Bath & Beyond, Home Depot, IKEA, Lowe's, Target and Walmart;
- Department Stores: JCPenney and Macy's;

- Specialty Retailers: Crate and Barrel, Ethan Allen, HomeGoods, Pottery Barn and Restoration Hardware; and
- ***Online Retailers and Online Marketplaces: Amazon and eBay.***

We expect competition in e-commerce generally to continue to increase. We believe that our ability to compete successfully depends upon many factors both within and beyond our control, including:

- the size and composition of our customer base;
- the number of suppliers and products we feature on our sites;
- our selling and marketing efforts;
- the quality, price and reliability of products offered either by us;
- the convenience of the shopping experience that we provide;
- our ability to distribute our products and manage our operations; and
- our reputation and brand strength.

Many of our current competitors have, and potential competitors may have, longer operating histories, greater brand recognition, larger fulfillment infrastructures, greater technical capabilities, faster and less costly shipping, significantly greater financial, marketing and other resources and larger customer bases than we do. These factors may allow our competitors to derive greater net revenue and profits from their existing customer base, acquire customers at lower costs or respond more quickly than we can to new or emerging technologies and changes in consumer habits. These competitors may engage in more extensive research and development efforts, undertake more far-reaching marketing campaigns and adopt more aggressive pricing policies, which may allow them to build larger customer bases or generate net revenue from their customer bases more effectively than we do.

(Emphasis added).

20.    The 1Q 2015 10-Q was signed by Defendants Shah and Fleisher. Attached to the 1Q 2015 10-Q were the SOX certifications signed by Defendants Slater and Shaheen attesting to the accuracy of the 1Q 2015 10-Q.

21.    On August 12, 2015, the Company filed a Form 10-Q for the quarterly period ended June 30, 2015 with the SEC (the "2Q 2015 10-Q"), which stated the following with regards to its competitors:

8

**Our business is highly competitive. Competition presents an ongoing threat to the success of our business.**

Our business is rapidly evolving and intensely competitive, and we have many competitors in different industries. Our competition includes: furniture stores, big box retailers, department stores, specialty retailers, and online retailers and marketplaces, including:

- Furniture Stores: Ashley Furniture, Bob's Discount Furniture, Havertys, Raymour & Flanagan and Rooms To Go;
- Big Box Retailers: Bed, Bath & Beyond, Home Depot, IKEA, Lowe's, Target and Walmart;
- Department Stores: JCPenney and Macy's;
- Specialty Retailers: Crate and Barrel, Ethan Allen, HomeGoods, Pottery Barn and Restoration Hardware; and
- ***Online Retailers and Online Marketplaces: Amazon and eBay.***

We expect competition in e-commerce generally to continue to increase. We believe that our ability to compete successfully depends upon many factors both within and beyond our control, including:

- the size and composition of our customer base;
- the number of suppliers and products we feature on our sites;
- our selling and marketing efforts;
- the quality, price and reliability of products offered either by us;
- the convenience of the shopping experience that we provide;
- our ability to distribute our products and manage our operations; and
- our reputation and brand strength.

Many of our current competitors have, and potential competitors may have, longer operating histories, greater brand recognition, larger fulfillment infrastructures, greater technical capabilities, faster and less costly shipping, significantly greater financial, marketing and other resources and larger customer bases than we do. These factors may allow our competitors to derive greater net revenue and profits from their existing customer base, acquire customers at lower costs or respond more quickly than we can to new or emerging technologies and changes in consumer habits. These competitors may engage in more extensive research and development efforts, undertake more far-reaching marketing campaigns and adopt more aggressive pricing policies, which may allow them to build larger customer bases or generate net revenue from their customer bases more effectively than we do.

(Emphasis added).

22.    The 2Q 2015 10-Q was signed by Defendants Shah and Fleisher. Attached to the 2Q 2015 10-Q were the SOX certifications signed by Defendants Slater and Shaheen attesting to the accuracy of the 2Q 2015 10-Q.

23.    The statements referenced in ¶¶14-22 above were materially false and misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Overstock is a competitor; and (2) as a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Emerges

24.    On August 31, 2015, analyst firm Citron Research published a report on Wayfair asserting, among other things, that Wayfair fails to mention Overstock as a competitor in its SEC filings despite the similarities between the companies (the "Citron Research Report").

25.    The Citron Research Report states in part:

**It's Overstock!!**

First we would like to stress the obvious, which everyone except the company and the analysts will admit. ***Wayfair is Overstock, plain and simple. The only difference is that Overstock has better brand recognition and higher traffic. 74% of all Overstock sales are furniture and home goods.*** Here is a quick comparison of the two companies:

|  | Wayfair | Overstock |
|---|---|---|
| Home and Garden | 95% | 75% |
| Drop Ship Product Transaction | 95% | 90% |
| Revenues, last 6 months | 916,123,000 | 786,357,000 |
| Net gain (loss) | (46,470,000) | 4,407,000 |
| Price / Sales (ttm) | 2.18 | .32 |
| Website Rank | 160th in the US | 138th in the US |
| Enterprise Value | 3,390,000,000 | 402,690,000 |

What is more amazing is that in Wayfair's analyst report from Evercore we see a consumer survey showing that in the past 12 months **more people shopped for home goods on Overstock than Wayfair.**

Exhibit 60

## Mind Share of Retailers Online and In-Store
*On which of the following websites/ stores have you shopped for home furniture/ goods during the last 12 months? Please select all that apply.*

|  | Home Goods | | Home Furnishing | |
|---|---|---|---|---|
|  | Online | Store | Online | Store |
| Amazon | 58% | -- | 35% | -- |
| Walmart | 41% | 61% | 29% | 37% |
| Target | 34% | 51% | 22% | 31% |
| Department Stores | 31% | 44% | 19% | 26% |
| Bed, Bath & Beyond | 28% | 42% | 14% | 20% |
| Overstock | 18% | -- | 13% | -- |
| Wayfair | 10% | -- | 9% | -- |
| Pier 1 | 7% | 10% | 6% | 9% |
| Pottery Barn | 7% | 8% | 6% | 6% |
| Williams-Sonoma | 6% | 7% | 3% | 4% |

*Source: Evercore ISI Research*

With only slightly more top line revenue, Wayfair is running 5x the amount of commercials as Overstock. Notice even the advertising agencies make the apples to apples comparison.

|  | Number of Spots | National Airings | Airing Rank | Spend Rank |
|---|---|---|---|---|
| Wayfair | 29 | **2,806** | 236 | 297 |
| Overstock | 85 | 506 | 981 | 747 |

http://www.ispot.tv/brands/Id3/wayfair                          and
http://www.ispot.tv/brands/d32/overstock-com

Both companies even have the same corporate strategies.

**This month Overstock partners with HGTV:**
http://www.furnituretoday.com/article/522546-overstock-partners-hgtv-urban-oasis-home

**And a few months ago Wayfair partners with HGTV:**
http://www.homeaccentstoday.com/article/519317-wayfair-partners-hgtv-fixer-upper-stars

**For those who are not convinced this is the same business as Overstock: take this.**

**While never PR'd by Wayfair, local news stories have confirmed that as of this month Wayfair has committed to open a 1 million Sq Ft. warehouse facility in Cincinnati. (so much for the "asset light" model)** http://www.cincinnati.com/story/money/2015/08/26/wayfair-distribution-center/32398239/

This happens to be two miles away from the Overstock warehouse in Cincinnati.   https://www.internetretailer.com/2013/03/07/overstock-looks-east-new-warehouse-near-cincinnati

**And BOTH companies also operate Warehouse shipping Distribution Centers in Utah.**

**So how does studying Overstock help us understand where Wayfair will trade in 12 months?**

(OSTK) was spending a similar portion of its gross revenues on marketing until 2006-2007, when it reduced this unsustainable spend rate to around 10% of sales. What happened? Revenue growth fell from 63% per year in 2005 to -3% in 2007 and never really recovered....Nothing more to be said. https://www.newconstructs.com/danger-zone-wayfair/

***Wayfair actually intentionally shuns the comparison (incredibly, they refuse to mention Overstock as a competitor in their SEC filings.)*** The ONLY conceivable rationale for this omission is if they acknowledge Overstock as a comp, it becomes apparent to all that Wayfair's stock is not worth more than $10 a share.

(Emphasis added).

26.    As a result of this news, shares of Wayfair fell $4.92 per share or over 11% to close at $37.30 per share on August 31, 2015, damaging investors.

## CLASS ACTION ALLEGATIONS

27.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased Wayfair securities during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times,

members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

28.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Wayfair securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Millions of Wayfair shares were traded publicly during the Class Period on the NYSE. As of July 31, 2015, there were approximately 43.28 million shares of Wayfair Class A common stock outstanding. Record owners and other members of the Class may be identified from records maintained by Wayfair or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

29.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law, which is complained of herein.

30.     Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

31.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     Whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)      Whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Wayfair;

(c)      Whether the price of Wayfair shares was artificially inflated during the Class Period; and

(d)      To what extent the members of the Class have sustained damages, and the proper measure of damages.

32.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## LOSS CAUSATION

33.      The market for Wayfair's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Wayfair's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Wayfair's securities relying upon the integrity of the market price of Wayfair's securities and market information relating to Wayfair, and have been damaged thereby.

34.      During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Wayfair's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements,

as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

35.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about Wayfair's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Wayfair and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

36.    The market for Wayfair securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Wayfair securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities, relying upon the integrity of the market price of Wayfair securities and the market information relating to Wayfair, and have been damaged thereby.

37.    During the Class Period, the artificial inflation of Wayfair stock was caused by the material misrepresentations and/or omissions particularized in this Complaint, causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Wayfair's business, operations and financial prospects. These material misstatements and/or omissions created an unrealistically positive assessment of Wayfair and its business and financial condition, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

38.    At all relevant times, the market for Wayfair securities was an efficient market for

the following reasons, among others:

(a)    Wayfair securities met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)    As a regulated issuer, Wayfair filed periodic public reports with the SEC and/on the NYSE;

(c)    Wayfair regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging

public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Wayfair was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

39.    As a result of the foregoing, the market for Wayfair securities promptly digested current information regarding Wayfair from all publicly available sources and reflected such information in Wayfair's stock price. Under these circumstances, all purchasers of Wayfair securities during the Class Period suffered similar injury through their purchase of Wayfair securities at artificially inflated prices, and a presumption of reliance applies.

### APPLICABILITY OF PRESUMPTION OF RELIANCE: <u>AFFILIATED UTE</u>

40.    Neither Plaintiff nor the Class need prove reliance either individually or as a class because under the circumstances of this case, which involves a failure to disclose Overstock as a competitor to the Company described herein above, positive proof of reliance is not a prerequisite to recovery, pursuant to ruling of the United States Supreme Court in Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

## COUNT I

### Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against Defendants

41.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

42.     During the Class Period, the Individual Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Wayfair securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, the Individual defendants, and each of them, took the actions set forth herein.

43.     The Individual Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Wayfair securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. The Individual Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

44.     The Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Wayfair's business, operations and financial performance and prospects, as specified herein.

45.     The Individual Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Wayfair' value and performance and continued substantial growth. These acts included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Wayfair and its business operations and financial prospects in light of the circumstances under which they were made, not misleading. As set forth more particularly herein, Defendants further engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period. Individual Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Individual Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Wayfair' financial condition from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Individual Defendants' misstatements and/or omissions concerning the Company's business, operations, financial well-being, and prospects throughout the Class Period, Individual Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

46.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Wayfair securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by the Individual Defendants, or upon the integrity of the market in which the securities trade, and/or in the absence of material adverse information that was known to or recklessly disregarded by the Individual Defendants, but not disclosed in public statements by the Individual Defendants during the Class Period, Plaintiff and the other members of the Class acquired Wayfair securities during the Class Period at artificially high prices and were damaged thereby.

47.    At the time of said misrepresentations and/or omissions, Plaintifs and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Wayfair and its business and prospects, which were not disclosed by Individual Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Wayfair securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

48.    By virtue of the foregoing, the Individual Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

49.    As a direct and proximate result of Individual Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

**Violation of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

50.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53.    The Individual Defendants acted as controlling persons of Wayfair within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contend are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.    In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

55.    As set forth above, Wayfair and the Individual Defendants violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section

20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  August 3,  2015

<div style="margin-left:40%">

**POMERANTZ LLP**

_s/ Jeremy A. Lieberman_
Jeremy A. Lieberman
J. Alexander Hood, II
Marc C. Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
mgorrie@pomlaw.com

</div>

**POMERANTZ LLP**

Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**

Peretz Bronstein (pb8628)
60 E. 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiff*

**CERTIFICATION PURSUANT**
**TO FEDERAL SECURITIES LAWS**

1.   I, _Henry W. Jenkins_ , make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against Wayfair, Inc. ("Wayfair" or the "Company") and, authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire Wayfair securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Wayfair securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my transactions in Wayfair securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed ___Sept. 3, 2015___
                    **(Date)**

_____
                    **(Signature)**

HENRY W. JENKINS
**(Type or Print Name)**

### SUMMARY OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES | PRICE PER SHARE |
|---|---|---|---|
| 8/27/2015 | Purchase | 1000 | $44.24 |
| 9/1/2015 | Sale | 1000 | $35.43 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |